DECISION AND JUDGMENT ENTRY
{¶ 1} The parties to this appeal ask for review of a July 21, 2003 judgment of the Erie County Court of Common Pleas that partially granted a motion for judgment notwithstanding the verdict. The court lowered the amount of the jury award from $100,000 to $60,000. Appellant, Sealmaster Industries, contends this was an insufficient reduction; cross-appellant, Tom Boston, argues that the $100,000 jury award should never have been reduced.
 Facts {¶ 2} This case involves a NASCAR-related contract dispute. Tom Boston had a Bobby Wellman NASCAR truck chassis and wanted to race professionally. Sealmaster Industries raced NASCAR trucks and needed a Bobby Wellman chassis. Boston was contacted by Sealmaster's principal driver, and the parties struck a deal in late April 1998. Boston would deliver his chassis to Sealmaster, but it would remain his property until a "further agreement on its transfer to SealMaster Racing [could] be reached." Both sides entered into a "no compete" for two years that neither side could pursue sponsors that the other side had obtained.
 {¶ 3} Boston sent his chassis to Sandusky, Ohio, where Sealmaster is located. The company immediately started to modify it for their needs. Boston obtained a letter of agreement confirming that Sealmaster would provide him with a race, but because the document did not contain the exact terms Boston remembered, he refused to sign. The parties dispute what happened next. Boston testified at trial that he and the President of Sealmaster, Duke Thorson, entered into a "handshake agreement" that Sealmaster would provide Boston with a race in return for his chassis. Thorson disagreed with Boston's version and testified that they entered into a written agreement that matched the letter of agreement that Boston had rejected. No evidence was provided to support Thorson's assertion. Others testified that they understood the contract between Boston and Sealmaster was the chassis for a race.
 {¶ 4} Sealmaster never gave Boston a race. Boston did travel to California after a representative of Sealmaster told him he would be racing there, only to be told otherwise when he arrived. By August 1999, Boston hired a Texas attorney to help him get his race or recoup $25,000 for the chassis. A demand letter to Sealmaster for $25,000 dated February 14, 2000 went unanswered. After the demand letter, Boston spoke with Sealmaster representatives to get his chassis back or receive $25,000. Sealmaster then sent Boston a "show truck," which was not capable of being raced. Boston complained because he was dissatisfied with the vehicle sent and wanted a race truck, at one point stating, "Send me something."
 {¶ 5} Sealmaster tried, to no avail, to get someone else to take the show truck. Boston, meanwhile, was able to obtain four races with another company. The first race that Boston participated in was held in Memphis, Tennessee.
 {¶ 6} Boston sued Sealmaster on January 7, 2002, for breach of contract, lost profits, conversion, and unjust enrichment. At trial, he asked that the court conform the pleadings to the evidence presented at trial. Sealmaster did not object. The case was then presented to the jury for a general verdict on the claims of breach of contract, conversion, and unjust enrichment. The jury returned a general verdict for Boston in the amount of $100,000. Sealmaster filed a motion for new trial and a motion for judgment notwithstanding the verdict. After a hearing on those issues and the issue of prejudgment interest, the trial court denied Sealmaster's motion for new trial and partially granted its motion for judgment notwithstanding the verdict, by reducing the $100,000 jury award to $60,000. Both sides now appeal.
 II. Assignments of Error {¶ 7} Both assignments of error in this case concern the trial court's July 21, 2003 judgment entry that reduced Boston's jury award from $100,000 to $60,000. Because similar issues are at issue, the assignments will be addressed together.
 Sealmaster's Assignment of Error {¶ 8} "The trial court erred in failing to grant the motion for new trial and granted a reduction of the jury award in an amount which still was excessive."
 B. Boston's Cross-Assignment of Error {¶ 9} "The trial court erred in granting Defendant/Cross-Appellee Sealmaster's alternative motion for judgment notwithstanding the verdict by substituting the court's judgment for $60,000.00 and setting aside a unanimous jury's general verdict for $100,000.00."
 III. Procedural Issues {¶ 10} Before proceeding to the merits, we will address several procedural matters raised concerning whether Sealmaster filed its motion for judgment notwithstanding the verdict in a timely manner and whether the transcripts in this case were properly before us since Huntley Reporting Service was not named as the official court reporter for this case until after the appellate process was already started.
 Final Judgment Entry {¶ 11} Boston argues that Sealmaster did not timely file its motion for judgment notwithstanding the verdict. Sealmaster filed its motion on February 13, 2003. The final judgment entry in this case was filed and journalized on either January 29, 2003, the last day of trial, or February 3, 2003, as a final entry.
 {¶ 12} Civ.R. 58 concerns the entry of judgment after a general verdict by the jury. A judgment entry is final where "the trial judge clearly declared his intention to enter a final decision in the matter before him." Millies v. Millies (1976),47 Ohio St.2d 43, 44. "[T]he label or title placed on a document is not by itself determinative that the document is, in fact, a judgment entry." St. Vincent Charity Hosp. v. Mintz (1987),33 Ohio St.3d 121, 123. What is important is whether the entry contained "a concise statement of the findings, concluding in an unequivocal order, [so] the trial court clearly evinced the intent that this was the announcement of its judgment in the case." Id. "A judgment entry should, therefore, contain a `sufficiently definitive formal statement' that indicates the court's present intention by such entry to effect a termination of the litigation." Peters v. Arbaugh (1976),50 Ohio App.2d 30, 32. (Emphasis in original.)
 {¶ 13} Here, while the trial court labeled both the January 29, 2003 entry and the February 3, 2003 entry as judgment entries, it appears that the trial court intended the February 3, 2003 judgment entry to be the final judgment entry that terminated the litigation. It stated, "This action came on for trial before the Court and a jury, and the issues having been duly tried and the jury having duly rendered its verdict, IT IS ORDERED AND ADJUDGED that the plaintiff, Tom Boston d/b/a, A Paint Body Shop, recover of the defendants Sealmaster Industries, Inc. Sealmaster Racing, Inc., jointly and severally, the sum of One Hundred Thousand Dollars ($100,000), with interest thereon as provided by law." Thus, it contained all elements needed to show finality; the January 29, 2003 entry simply announced the jury's verdict.
 B. Appointment of the Court Reporter and Transmission of the Record {¶ 14} Boston argues that the record in this case should be limited because the judge did not have an amended transcript at the time he rendered his decision on the post-trial motions and a court reporter was not officially appointed in this case until after this appeal was already pending. Boston argues that we should only consider the transcripts prepared by Huntley Reporting Service before the post-trial motions were decided. Sealmaster responds that since the trial court appointed Huntley Reporting Service as the official court reporter on January 29, 2004, any issue as to the transcript was cured.
 {¶ 15} R.C. 2301.18 and R.C. 2301.19 state that the court of common pleas must appoint an official shorthand reporter for the court and may appoint as many assistant shorthand reporters as the needs of the court require. App.R. 9(B) and App.R. 10(A) specify that it is the appellant's duty to order the transcript and make sure it is transmitted to the appellate court. "The duty to provide a transcript for appellate review falls upon the appellant. This is necessarily so because an appellant bears the burden of showing error by reference to matters in the record. See State v. Skaggs (1978), 53 Ohio St.2d 162. This principle is recognized in App. R. 9(B), which provides, in part, that `* * * the appellant shall in writing order from the reporter a complete transcript or a transcript of such parts of the proceedings not already on file as he deems necessary for inclusion in the record * * *.' When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm."Knapp v. Edwards Laboratories (1980), 61 Ohio St.2d 197, 199. See also, Ostrander v. Parker-Fallis (1972), 29 Ohio St.2d 72,74.
 {¶ 16} "On appeal, this court may only consider a transcript prepared by the official court reporter, who `is the person appointed by the trial court to transcribe the proceedings for the trial court * * *. If there is no officially appointed reporter, App.R. 9(C) or 9(D) may be utilized.' App.R. 9(B). We are limited in our review on appeal to the record provided to us pursuant to App.R. 9. App.R. 12(A)(1)(b)." Twinsburg v. Atkins
(Oct. 3, 2001), 9th Dist. No. 20510. The trial court's determination, furthermore, must be affirmed where the review of a ruling on a judgment notwithstanding the verdict is requested and an incomplete transcript is provided to the appellate court.Martin v. Banks (Jan. 9, 1992), 8th Dist. Nos. 59603, 60528.
 {¶ 17} We have already addressed the practices of the Erie Court of Common Pleas and its use of Huntley Reporting Service inNorwest Bank Minnesota, N.A. v. Alex-Saunders, 6th Dist. No. E-03-007, 2003-Ohio-6967. In that case, Norwest filed a motion to strike the transcript and a motion to dismiss the appeal because the transcript was not prepared by an official court reporter. As in this case, the trial was recorded on compact disks, which were later transcribed by Huntley. Also, as in this case, Huntley was not officially appointed to transcribe the proceedings before appeal. Id., at ¶ 4-10. We determined that since no official court reporter was appointed, Norwest's motion to strike was granted and ordered "that the three transcript of proceedings volumes be stricken from the record of this appeal. In the interest of justice, we sua sponte grant appellant leave to supplement the record on appeal with an App.R. 9(C) statement of evidence or proceedings within 30 days of the date of this decision and judgment entry." Id., at ¶ 18.
 {¶ 18} Here, the appeal was pending when the Norwest
decision was released. It is clear from the motions that the trial court took steps to remedy the issue that was raised inNorwest. We expect that the future practice of the trial court will be to appoint any official court reporters before the need for transcripts arises in a particular case. Therefore, in the interests of justice, we grant Sealmaster's motion to supplement the record with the transcripts of the proceedings in this case since the trial court took the required step of appointing an official court reporter in this case as dictated in the Norwest
decision.
 {¶ 19} Boston also argues that we should only consider the transcripts that were prepared originally, rather than the amended transcripts prepared later. That argument fails, however, because the trial judge was present for the trial and even mentioned that he took good notes; he was not required to rely on transcripts before deciding the motion for judgment notwithstanding the verdict.
 IV. Sealmaster's Post-Trial Motions {¶ 20} This case concerns two post-trial motions: a motion for new trial and a motion for judgment notwithstanding the verdict. The first is reviewed under an abuse of discretion standard, the latter de novo.
 Motion for New Trial {¶ 21} A motion for new trial is provided for under Civ.R. 59. It is reviewed under an abuse of discretion standard. Oslerv. Lorain (1986), 28 Ohio St.3d 345, 351. "The meaning of the term `abuse of discretion' in relation to the granting [or denying] of a motion for a new trial connotes more than an error of law or of judgment; it implies an unreasonable, arbitrary or unconscionable attitude on the part of the court." Steiner v.Custer (1940), 137 Ohio St. 448, at paragraph two of the syllabus.
 {¶ 22} In addition, when a trial court is "ruling on a motion for a new trial upon the basis of a claim that the judgment `is not sustained by sufficient evidence,' the trial court must weigh the evidence and pass upon the credibility of the witnesses, not in the substantially unlimited sense that such weight and credibility are passed on originally by the jury but in a more restricted sense of whether it appears to the trial court that manifest injustice has been done and that the verdict is against the manifest weight of the evidence." Rohde v. Farmer (1970),23 Ohio St.2d 82, at paragraph three of the syllabus. Thus, "a reviewing court should view the evidence favorably to the trial court's action rather than to the jury's verdict. The predicate for that rule springs, in part, from the principle that the discretion of the trial judge in granting a new trial may be supported by his having determined from the surrounding circumstances and atmosphere of the trial that the jury's verdict resulted in manifest injustice." Jenkins v. Krieger (1981),67 Ohio St.2d 314, 320. It is not the place of an appellate court to weigh the evidence in these types of cases. Mannion v. Sandel
(2001), 91 Ohio St.3d 318, 322.
 {¶ 23} The trial court is due similar deference where the new trial motion is based upon either the jury's passion or prejudice in determining damages or an excessive or insufficient amount of damages arrived at by the jury. Shoemaker v. Crawford (1991),78 Ohio App.3d 53, 65; Cent. Mut. Ins. Cos. TJ Elec. v. Mario'sParty Store Gas (Aug. 18, 1989), 6th Dist. No. L-88-319. Therefore, when faced with the review of a new trial motion, appellate courts should respect the sound discretion of the trial court. Yungwirth v. McAvoy (1972), 32 Ohio St.2d 285, 286.
 {¶ 24} Here, we must defer to the trial court's denial of the new trial motion. The court did not abuse its discretion in reaching that decision, the record shows that none of the grounds for new trial exist.
 B. Judgment Notwithstanding the Verdict {¶ 25} A motion for judgment notwithstanding the verdict is provided for under Civ.R. 50(B). It is reviewed under a de novo standard. Singh v. New York Frozen Foods, 8th Dist. Nos. 82284 82775, 2004-Ohio-1257, at ¶ 6; Jones v. Norfolk Southern Ry.Co., 6th Dist. No. L-01-1490, 2002-Ohio-3412, at ¶ 9. The reason for that standard is that a motion for judgment notwithstanding the verdict, as well as a motion for directed verdict, concern questions of law not fact. O'Day v. Webb (1972),29 Ohio St.2d 215, at paragraph three of the syllabus. They examine the "materiality of the evidence, as opposed to the conclusions to be drawn from the evidence." Ruta v. Breckenridge-Remy Co. (1982),69 Ohio St.2d 66, 69.
 {¶ 26} "The test to be applied by a trial court in ruling on a motion for judgment notwithstanding the verdict is the same test to be applied on a motion for a directed verdict. The evidence adduced at trial and the facts established by admissions in the pleadings and in the record must be construed most strongly in favor of the party against whom the motion is made, and, where there is substantial evidence to support his side of the case, upon which reasonable minds may reach different conclusions, the motion must be denied." Posin v. A.B.C. MotorCourt (1976), 45 Ohio St.2d 271, 275. Additionally, "[i]n considering a motion for judgment notwithstanding the verdict, a court does not weigh the evidence or test the credibility of the witnesses." Osler v. Lorain (1986), 28 Ohio St.3d 345, at the syllabus.
 {¶ 27} Civ.R. 50(B) expressly addresses what actions a trial court should take when a motion for new trial is filed along with a motion for judgment notwithstanding the verdict. It states, "[a] motion for a new trial may be joined with this motion, or a new trial may be prayed for in the alternative. If a verdict was returned, the court may allow the judgment to stand or may reopen the judgment. If the judgment is reopened, the court shall either order a new trial or direct the entry of judgment, but no judgment shall be rendered by the court on the ground that the verdict is against the weight of the evidence."
 {¶ 28} Here, the trial court did not err when it granted Sealmaster's motion in part. Even when construing the record most strongly in favor of Boston, there was not substantial evidence to support the claims for conversion and unjust enrichment. Reasonable minds could not reach different conclusions because once a contract existed to exchange the chassis to Sealmaster in return for a race, Boston relinquished any interest in the chassis. As a matter of law, the trial did not err in lowering the jury award because the original verdict of $100,000 was not supported by the record.
 V. Boston's Causes of Action {¶ 29} In this case, three causes of action were presented to the jury: breach of contract, conversion, and unjust enrichment. Of these causes of action, however, only a breach of an oral contract was supported by the record.
 Breach of Contract {¶ 30} The "[t]erms of an oral contract may be determined from `words, deeds, acts, and silence of the parties.'"Kostelnik v. Helper, 96 Ohio St.3d 1, 2002-Ohio-2985, at ¶ 15, citing Rutledge v. Hoffman (1947), 81 Ohio App. 85, at paragraph one of the syllabus. "`A contract is generally defined as a promise, or a set of promises, actionable upon breach. Essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration.'Perlmuter Printing Co.v. Strome, Inc. (N.D.Ohio 1976), 436 F. Supp. 409, 414. A meeting of the minds as to the essential terms of the contract is a requirement to enforcing the contract. Episcopal RetirementHomes, Inc. v. Ohio Dept. of Indus. Relations (1991),61 Ohio St.3d 366, 369." Id., at ¶ 16. Furthermore, "[i]t is axiomatic that a claimant seeking to recover for a breach of contract must show injuries as a result of the breach in order to recover damages from the breaching party. Metropolitan Life Ins. Co. v.Triskett Illinois, Inc. (1994), 97 Ohio App.3d 228, 235. Damages are not awarded for a mere breach alone. * * * Generally, a party injured by a breach of contract is entitled to his expectation interest, or `his interest in having the benefit of his bargain by being put in as good a position as he would have been in had the contract been performed.' Restatement of the Law 2d, Contracts (1981) 102-103, Section 344." Rasnick v. Tubbs
(1998), 126 Ohio App.3d 431, 435, 437. Accord, Decastro v.Wellston City School Dist. Bd. Of Edn., 94 Ohio St.3d 197,2002-Ohio-478.
 {¶ 31} Here, the record shows that Boston and Sealmaster entered into an agreement to exchange Boston's Bobby Wellman truck chassis for a race with Sealmaster's racing team. There was an original writing that provided for the chassis to be sent to Sealmaster with Boston retaining ownership of the chassis until they made a further agreement concerning its transferred ownership to Sealmaster. In Sandusky, Boston and Sealmaster agreed that Boston would transfer his ownership of the truck chassis to Sealmaster in return for a race. The record shows disagreement over the exact contract terms, but both sides acknowledged that the underlying bargain was the truck chassis for a race. It is also undisputed that Boston turned over the truck chassis, but Sealmaster never provided Boston with a race. Neither side disputes that Boston contacted another racing team and bought races from them, the first being held in Memphis, Tennessee.
 {¶ 32} Sealmaster defends itself by emphasizing it sent Boston a show truck in satisfaction for his truck chassis. The record, however, does not show that this was an accord and satisfaction on Sealmaster's oral contract with Boston.
 {¶ 33} The law concerning accord and satisfaction is very clear. "Where there is a bona fide dispute over an unliquidated demand and the debtor tenders an amount less than the amount in dispute, upon the express condition that it shall be in full of the disputed claim, the creditor has but one alternative; he must accept the amount tendered upon the terms of the condition, unless the condition be waived, or he must reject it entirely, or if he has received the amount by check in a letter, he must return it." The Seeds Grain Hay Co. v. Conger (1910),83 Ohio St. 169, at paragraph one of the syllabus. Furthermore, "[w]hen an accord and satisfaction is pled by the defendant as an affirmative defense, the court's analysis must be divided into three distinct inquires. First, the defendant must show that the parties went through a process of offer and acceptance — and accord. Second, the accord must have been carried out — a satisfaction. Third, if there was an accord and satisfaction, it must be have been supported by consideration." Allen v. R.G.Indus. Supply (1993), 66 Ohio St.3d 229, at paragraph one of the syllabus.
 {¶ 34} No one disputes that Sealmaster sent Boston a show truck to settle the conflict between them. Boston, however, was not satisfied with the show truck, since he had wanted a truck to race. He told Sealmaster he did not want the truck. Therefore, the first requirement of an accord and satisfaction — an accord — was not present. Boston never accepted the offer of the show truck in satisfaction of the truck chassis that he tendered to Sealmaster. As a result, the record supports the finding of the trial court that the damages should be awarded for the breach of contract. We turn next to the claim for conversion.
 B. Conversion {¶ 35} The record does not support the trial court's awarding of damages for conversion. "Conversion is a wrongful exercise of dominion over property in exclusion of the right of the owner, or withholding it from his possession under a claim inconsistent with his rights." Zacchini v. Scripps-Howard Broadcasting Co.
(1976), 47 Ohio St.2d 224, 226, citing Railroad Co. v.O'Donnell (1892), 49 Ohio St. 489, 497. See also, Blon v. BankOne, Akron, N.A. (1988), 35 Ohio St.3d 98, 103; Rach v.Higgins (Apr. 18, 1991), 4th Dist. No. 749. "The measure of damages in a conversion action is the value of the converted property at the time of the conversion." Brumm v. McDonald Co. Securities, Inc. (1992), 78 Ohio App.3d 96, 104, citingErie RR. Co. v. Steinberg (1916), 94 Ohio St. 189, at paragraph two of the syllabus; Baird v. Howard (1894), 51 Ohio St. 57, at paragraph one of the syllabus. (Emphasis in original.)
 {¶ 36} Courts have historically viewed actions for breach of contract and conversion to be alternate causes of action.Richardson v. Shaw (1908), 209 U.S. 365, 382-383. An action for damages may be held in either one or the other. Erie RR. Co. v.Steinberg (1916), 94 Ohio St. 189, at paragraph one of the syllabus. In this case, the record reflected that Boston contracted with Sealmaster to give his Bobby Wellman truck chassis in return for a race. Once the exchange occurred, Boston no longer had rights to the chassis; the writing he signed before his oral contract with Sealmaster recognized that principle.
 {¶ 37} Even if Boston had a possessory interest in the chassis, he could not recover for both a breach of contract over the chassis and its conversion because this would constitute an improper double recovery. See, Smith v. Stacy (June 21, 2001), 4th Dist. No. 00CA648. Another appellate court, faced with identical damages for conversion and breach of contract, held that the "case is clearly and simply a contract action." DreamMakers, Inc. v. Marshek, 8th Dist. No. 81249, 2002-Ohio-7069, at ¶ 20. Therefore, the trial court erred in awarding Boston damages for conversion. Finally we examine the claim for unjust enrichment.
 C. Unjust Enrichment {¶ 38} Unjust enrichment occurs when a party has or retains money or benefits, which in justice and equity belong to another.Hummel v. Hummel (1938), 133 Ohio St. 520, 528. It arises out of the concept of quasi contract. "A quasi contract is not the result of a meeting of the minds but is implied and imponed by law without the consent of the obligor to prevent the obligor from enjoying benefits which in equity and good conscience he is not entitled to retain." Hughes v. Oberholtzer (1954),162 Ohio St. 330, at paragraph one of syllabus. To prove unjust enrichment certain factors must be present: (1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit, and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment.Burgin v. Madden, 6th Dist. No. L-01-1267, 2002-Ohio-2636, at ¶ 29, citing Hambleton v. R.G. Barry Corp.(1984),12 Ohio St.3d 179, 183. See also, Sheperak v. Ludlow, 6th Dist. No. F-03-011, 2004-Ohio-3155, at ¶ 25; Midwest Environmental Controls Inc. v.Houttekier, 6th Dist. No. L-02-1259, 2003-Ohio-3103, at ¶ 7-8. "[U]nder unjust enrichment, damages are conferred in the amount by which the defendant benefitted." Thoms v. Thayer (Feb. 6, 1998), 6th Dist. No. E-97-016, citing Loyer v. Loyer (Aug. 16, 1996), 6th Dist. No. H-95-068.
 {¶ 39} A recovery for unjust enrichment could not occur for Boston, as a matter of law, because an actual contract existed concerning the chassis; therefore, a quasi contract did not exist. The trial court, therefore, did not err when it failed to award Boston damages for unjust enrichment.
 VI. Conclusion {¶ 40} After reviewing the record and applying the applicable standards, we find that the trial court did not abuse its discretion in denying Sealmaster's motion for new trial. The trial court did not err as a matter of law when it partially granted the judgment notwithstanding the verdict, but it did err in awarding damages for conversion of Boston's chassis along with contractual damages. We, therefore, find Sealmaster's assignment of error well-taken in part and not well-taken in part and find Boston's assignment of error not well-taken.
 {¶ 41} The judgment of the Erie County Court of Common Pleas is affirmed in part, reversed in part as explained above, and remanded for further proceedings consistent with this decision, including a hearing to determine the amount of damages due to Boston solely for breach of contract. Boston and Sealmaster are each ordered to pay one-half of the court costs of this appeal as specified under App.R. 24.
Judgment Affirmed, in part, and Reversed, in Part.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, P.J., Knepper, J., Lanzinger, J. concur.