[Cite as *Erie Cty. Bd. of Commrs. v. Hintz*, 2023-Ohio-1595.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

Board of County Commissioners of
Erie County, Ohio

        Appellant

v.

Joseph Hintz, et al.

        Appellees

Court of Appeals No.  E-21-038

Trial Court No. 2018CV0192


**DECISION AND JUDGMENT**

Decided:  May 12, 2023

* * * * *

Wilbert V. Farrell, IV and Matthew N. Danese, for appellant.

Albin Bauer, II, Sherrie C. Massey, Randal L. Strickler, Jacob Stephens,
Gordon D. Woolbert, II, and Kathleen A. Fox, for appellees.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an appeal of a September 22, 2021 judgment of the Erie County

Court of Common Pleas, denying appellant's Civ.R. 59(A)(7) motion for a new trial in

the underlying breach of contract case.  The intra-government contract from which this

appeal arises was a written agreement with a five-year term, entitled "solid waste agreement", contracting for the provision of solid waste transport and disposal services from one county to a contiguous county. The agreement was executed by, and on behalf of, the following two government entities; the obligor, the Erie County Board of Commissioners ("Erie"), and the obligee, the Huron County Board of Commissioners ("Huron"), adjacent counties located in Northern Ohio.

{¶ 2} The solid waste services to be performed by Erie for Huron entailed the assemblage of solid waste materials, as performed through subcontractors, from a Huron solid waste transfer station, the placement of the materials onto trucks and trailers, the tarping of the materials to secure them for transport, the transportation of the materials for disposal in the Erie County landfill, and the daily cleanup of residual materials from the floor of the transfer station to mitigate the health and safety risks associated with the presence of such materials.

{¶ 3} This appeal stems from the occurrence of repeat, service performance deficiencies by the Erie subcontractors, which persisted for a considerable period of time. The service deficiencies first came to Huron's attention several years into the 2014-2019 contract term, which was the second of two, successive, substantively identical five-year solid waste contracts executed between the above-defined parties.

{¶ 4} In response to the discovery of the service deficiencies, Huron notified Erie of the specific performance shortcomings, and subsequently notified Erie of their ongoing

2.

recurrence. Erie never disputed the occurrence of, or the validity of, the performance issues raised by Huron. Erie consistently responded on behalf of Huron by communicating to the subcontractor the need to correct the issues. Prior to this appeal, Erie never disputed their responsibility for the issues.

{¶ 5} Ultimately, as a result of the failure of Erie to have the service deficiencies corrected, Huron terminated the contract early and retained a substitute solid waste services provider, Rumpke, to complete the services for the duration of the contract term.

{¶ 6} The core premise of this appeal is Erie's position, conveyed for the first time upon appeal, that none of the service deficiencies were enforceable contract terms, but rather, they constituted mere voluntary customer service efforts on the part Erie. Thus, Erie now maintains that they should be construed as unenforceable "oral understandings," from which no contractual liability can be attributed to them. For the reasons set forth below, this court affirms the judgment of the trial court.

{¶ 7} Appellant, Erie, sets forth the following two assignments of error:

No. 1: Erie is permitted to a new trial under Civ.R. 59(A)(7) because the plain language of [R.C.] 121.22 prohibits inclusion of oral understandings [].

No. 2: Erie is entitled to a new trial based upon the trial court's impermissible utilization of the void, legally insufficient contract between Huron and its replacement hauler, Rumpke, as a measure of damages.

3.

{¶ 8} The following undisputed facts are relevant to this appeal. On September 2, 2014, a five-year solid waste services agreement was executed between the parties. It constituted a successor agreement to a prior, five-year term solid waste contractual agreement, executed between the same parties, for the same solid waste services, in 2009.

{¶ 9} The agreement established, in relevant part, "Erie County desires to receive Huron County solid waste at the Erie County landfill, a facility approved and licensed by the Ohio EPA, since the tonnage and revenues have decreased at the Erie County landfill due to the slow economy." The agreement then set forth a chronological, tonnage-based, services cost schedule, covering the 2014-2019 duration of the agreement. It further set forth contractual billing procedures and payment deadline guidelines.

{¶ 10} Of principle significance, given the unresolved service deficiencies underlying Huron's early contract termination, the contract explicitly established that, "Erie County agrees to provide transport trailers equipped with automatic harpers to transport the waste. All equipment used to transport waste during the duration of the agreement shall be maintained by Erie County's transport contractor." In conjunction, the contract ascribed responsibility for any and all legal violations occurring in connection to the contractual services upon Erie. The contract established that, "Erie County shall be responsible for any and all fines, civil penalties, and assessments leveled by the US EPA, Ohio EPA, or any federal or state court for failure to * * * comply with

4.

any and all applicable federal, state, and local laws, ordinances, rules, and regulations relating to the Erie County landfill."

{¶ 11} Lastly, the contract provided for a one-year written notification provision for early termination of the contract by either party. The contract established that, "This agreement may be terminated early with a one (1) year written notice to the other party of the intent to terminate."

{¶ 12} In 2017, during the course of the second, five-year contract term, covering 2014-2019, Huron County discovered that numerous substandard service issues were routinely occurring. Specifically, Erie's subcontractor failed to furnish an adequate number of solid waste trucks and trailers at Huron's solid waste transfer station, as sufficient to handle the daily volume of solid waste that needed to be transported from the Huron transfer station to the Erie landfill for disposal. This shortfall resulted in an accumulation of residual solid waste debris being left on the floor of the transfer station for more than 12 hours each day, in violation of applicable Ohio EPA regulations. These conditions constituted health and safety risks created by the service deficiencies and precipitated Huron's notification to Erie of the service deficiencies.

{¶ 13} In addition, in breach of the above-quoted express contractual mandate that the trucks and trailers used by Erie in the transportation of the solid waste materials be tarped so as to contain loose materials and prevent spillage during transport, Huron discovered that many of the tarps on the vehicles being used for waste transport were

5.

damaged or missing, which resulted in waste spillage from the vehicles onto public roadways during transport, thereby causing public nuisance conditions.

{¶ 14} The record reflects that prior to this appeal, Erie never denied or refuted its' contractual obligations regarding any of the above-detailed service deficiencies. On the contrary, consistent with an awareness of their contractual obligations for the service issues underpinning this appeal, at the onset of the initial 2009 solid waste services agreement, the predecessor agreement to the 2014 agreement, the Erie County director of operations sent an email to Erie's subcontractor stating, "*How many drivers and tractors are you providing? * * * Are the trailers all equipped with automatic tarps? * * * As you are aware Huron County wants the transfer station floor cleaned at the end of each workday? Please commit to this task * * * Have [the] drivers trained in all appropriate safety issues.*"

{¶ 15} This communication reflects an unambiguous understanding by Erie that the vehicles must be tarped, that sufficient vehicles must be provided for transport of solid waste from the transfer station, and that the floor of the station must be clean by the end of each day. Again, Erie does not dispute that these service deficiencies occurred, but contrary to the above-quoted contract provisions and to their acknowledgement and responsiveness to Huron's concerns, Erie now claims that it bears no contractual liability for these issues.

6.

{¶ 16} Ultimately, despite the ongoing notifications in 2017-2018 by Huron to Erie of the service deficiencies, triggering contractual and regulatory implications, the deficiencies persisted. In a June 9, 2017 email to their subcontractor, Erie forewarned their subcontractor that, "*Huron County has reached the end of their patience* [with the service deficiencies]." (Emphasis added).

{¶ 17} Notwithstanding the persistence of the service deficiencies, and their awareness of Huron's patience coming to an end, Erie declined to terminate their agreement with their inadequately performing subcontractor. Rather, it was ultimately Erie's subcontractor who terminated their agreement with Erie. The subcontractor termination then prompted Erie to seek a substitute subcontractor to service the Huron contract for the duration of the contract term.

{¶ 18} In March, 2018, Erie contacted Huron and notified them of their unilateral selection of a substitute subcontractor to service Huron, in response to the Erie subcontractor terminating their agreement with Erie. Simultaneously, Erie required that Huron voluntarily consent to an extension of the original contract term, and further consent to an increased fee schedule, exceeding the contractual cost schedule established by the 2014 contract.

{¶ 19} In response to the unfavorable terms submitted by Erie, Huron declined and conducted their own selection and retention of a substitute contractor, Rumpke. In

7.

conjunction, at the end of March, 2018, Huron sent a written contract termination to Erie, setting into motion the breach of contract litigation underlying this appeal.

{¶ 20} In April, 2018, Erie filed suit against Huron, alleging both breach of contract and breach of the implied terms of good faith and fair dealing. In response, Huron filed a counterclaim against Erie, alleging breach of contract by Erie, which warranted early contract termination and damages, breach of flow control provisions, and Civ.R. 11 violations.

{¶ 21} Over the next several years, discovery was conducted. Ultimately, the case was not able to be resolved. On February 17, 2021, the case proceeded to a bifurcated bench trial, as segmented into liability and damages trials.

{¶ 22} The liability trial lasted approximately three weeks and was conducted via videoconferencing due to Covid considerations. On April 19, 2021, the trial court denied both of Erie's breach of contract claims against Huron, granted Huron's breach of contract counterclaim against Erie, thereby finding Erie liable, and denied the balance of Huron's counterclaims.

{¶ 23} The trial court held, in relevant part, "Here the parties' conduct and performance during their two contracts provides additional details of contract requirements[,] supplementing the written agreements drafted by the parties. Erie officials and their employees conduct demonstrated their knowledge of[,] and respect for[,] Huron's requirements." The trial court further held that, "The evidence showed

8.

that all through the [contract period] when problems arose with Erie's hauler, Huron officials continued to reinforce the specific requirements of sufficient, operable, and safe trailers, trash off the floor, and tarps to avoid litter. Erie officials responded dutifully * * * [and never] suggested it was not Erie's obligation to do so." In conjunction, the trial court found that, "*The evidence proved by the greater weight of the evidence that Erie County committed a material breach and thereby gave Huron sufficient cause to terminate the contract when it did * * * circumstances exist[ed] that permit both termination and pursuit of expectation damages*." (Emphasis added).

{¶ 24} On June 14, 2021, the damages portion of the trial was conducted. The trial court found Erie liable in damages to Huron in the amount of $169,013.67, reflecting Huron's actual damages, comprised of all increased costs associated with securing an alternative solid waste contractor to complete the contract term.

{¶ 25} On May 13, 2021, Erie filed a Civ.R. 59(A)(7) motion for a new trial alleging that the judgment was contrary to law based upon the claimed utilization of "oral understandings," and corresponding claims of R.C. 121.22 open meetings act violations by Huron. On September 22, 2021, appellant's motion for a new trial was denied. This appeal ensued.

{¶ 26} For clarity on the scope of this appeal, we note that the appeal does not maintain that the trial court liability and damages judgments were against the manifest

9.

weight of the evidence. Rather, this appeal is premised solely upon challenging the propriety of the trial court's denial of appellant's Civ.R. 59(A)(7) motion for a new trial.

{¶ 27} In the first assignment of error, appellant maintains that the trial court erred in denying appellant's Civ.R. 59(A)(7) motion for a new trial. In support, appellant summarily claims that the trial court improperly based its April 19, 2021 liability judgment upon "oral understandings", and relatedly, appellant further claims that any such "oral understandings" should be construed as constituting violations of Ohio's open meetings law by Huron. R.C. 121.22 establishes, "[A]ll meetings of any public body or declared to be public meetings open to the public at all times." We are not persuaded.

{¶ 28} Civ.R. 59(A)(7) establishes that, "A new trial may be granted to all or any of the parties and on all or part of the issues [if] * * * The judgment is contrary to law." As set forth in *Moore v. Moore*, 6th Dist. Erie No. E-17-011, 2018-Ohio-1545, ¶ 14, "The standard of review of a trial court judgment denying a motion for new trial under Civ.R. 59(A) depends on the ground for such motion. A motion for new trial brought under Civ.R. 59(A)(1), (2), (3), (4), (5), (6), or (8) is reviewed for an abuse of discretion * * * A motion for new trial brought under Civ.R. 59(A)(7) is reviewed de novo." Thus, the standard of review for this case is de novo.

{¶ 29} In conjunction, given that the contract was between governmental entities, Erie and Huron, as set forth in *EFA Ass. Inc. v. Dept. of Adm. Serv.*, 10th Dist. Franklin No. 01-AP-1001, 2002-Ohio-2421, ¶ 30, "A government contract should be interpreted as

10.

are contracts between individuals, with a view to ascertaining the intentions of the parties, and to give it effect accordingly, if that can be done consistently with the terms of the instrument."

{¶ 30} *St. Mary's v. Auglaize Cty. Bd. Of Commrs.*, 115 Ohio St.3d 387, 2007-Ohio-5026, 875 N.E.2d 561, recognizes:

Parties may implicitly modify an agreement by their actions. *Automated Solutions Corp. v. Paragon Data Sys., Inc.*, 167 Ohio App.3d 685, 2006-Ohio-3492, 856 N.E.2d 1008. A continued, different, course of performance between parties manifests a modification of the original agreement * * * where dispute arises relating to an agreement under which the parties have been operating for some considerable period of time, the conduct of the parties may be examined in order to determine the construction which they themselves have placed upon the contract. Id. at ¶ 39-40.

{¶ 31} In support of this appeal, Erie maintains that all evidence reflecting Erie's knowledge of, responsiveness to, and actions taken to address, the issues raised by Huron, namely, (1) Erie ensuring that a sufficient number of trucks and trailers were provided to timely transport and dispose of the solid waste received at the Huron transfer station; (2) Erie ensuring that functional tarping was present on the trucks and trailers used to avoid waste spillage during transport; and (3) Erie ensuring that loose solid waste

11.

did not remain overnight on the floor of the Huron transfer station, all merely reflected unenforceable customer service efforts by Erie, not contractual requirements, from which liability can be attributed to Erie.

{¶ 32} Conversely, Huron maintains that the above-described issues, violations of which ultimately resulted in Huron's early termination of the contract and substitution of Rumpke as the alternative solid waste services contractor, were part of the contractual agreement, both explicitly and implicitly, such that Huron's termination and pursuit of damages against Erie was warranted and not unlawful.

{¶ 33} Our consideration of these competing positions will commence with an examination of the plain language incorporated into the subject, written solid waste agreement executed between the parties.

{¶ 34} As held by this court in *Amalgamated Transit Union, AFL-CIO, Local 697 v. Toledo Area Regional Transit Auth*., 2020-Ohio-6655, 164 N.E.3d 569 (6th Dist.), ¶ 27.

> We have consistently explained that a party may contract for the terms they
> want and that the intent of the parties is presumed to reside in the language
> they choose to use in their agreement. *Hope Academy Broadway Campus
> v. White Hat Mgt., L.L.C*., 145 Ohio St.3d 29, 2015-Ohio-3716, 46 N.E.3d
> 665, ¶ 35, quoting *Graham v. Drydock Coal Co*., 76 Ohio St.3d 311, 667

12.

N.E.2d 949 (1996). Common words in a contract are given are given their plain and ordinary meaning unless another meaning is clearly evident.

{¶ 35} We first note that the solid waste services agreement explicitly states that, "HC [Huron County] does not guarantee any quantities of solid waste for the duration of the agreement." The agreement further establishes that, "EC [Erie County] agrees to provide transport trailers equipped with automatic harpers to transport the waste. All equipment used to transport waste during the duration of this agreement shall be maintained by EC's transport contractor." Thus, taken together, the plain language of the agreement clearly reflects that the contractual obligation of providing an adequate number of solid waste trucks and trailers, equipped with waste containing tarps for transport, is placed upon Erie, and the language further reflects that this obligation remains regardless of volume fluctuations.

{¶ 36} In conjunction, the agreement also establishes that, "EC [Erie County] shall be responsible for any and all fines, civil penalties, and assessments leveled by US EPA, Ohio EPA, or any federal or state court for failure to meet, perform, or comply with any and all applicable federal, state, and local laws, ordinances, rules, and regulations relating to the EC landfill." This express contractual language clearly evinces an understanding of the parties that all burdens related to collateral legal issues connected to the subject solid waste operations falls upon Erie. Accordingly, we find that the plain meaning of

13.

the contract language runs counter to Erie's position that it bears no contractual duty or liability regarding the service deficiencies underlying this case.

{¶ 37} Separate and apart from our determination that the plain language of the written solid waste agreement precludes Erie from avoiding contractual liabilities for the breaches underlying this appeal, the record further reflects that Erie's conduct and performance during the course of the two, five-year agreements, consistently reflects the mutual understanding and agreement of the contracting parties that these obligations and duties fell upon Erie.

{¶ 38} Appellee's Exhibit C, submitted at trial, was comprised of email communications between Erie's director of operations and the Erie subcontractor. Erie conveyed to their subcontractor, "How many drivers and tractors are you providing? * * * Are the trailers all equipped with automatic tarps? * * * As you are aware Huron County wants their transfer station floor clean at the end of each workday? Please commit to this task."

{¶ 39} Further bolstering this evidence of Erie's understanding of the now disputed contract obligations, on June 9, 2017, Erie's solid waste landfill manager emailed the Erie subcontractor clearly conveying, "Huron County has reached the end of their patience [with the deficiencies]." In conjunction, the record is devoid of evidence that Erie in any way contested responsibility on any of the underlying issues prior to this appeal.

14.

{¶ 40} Based upon the foregoing, we find that the record of evidence reflects that the plain meaning of the above-quoted provisions of the written solid waste agreement placed the contractual burden upon Erie for the issues comprising the performance deficiencies which preceded Huron's early termination of the contract. However, even assuming arguendo that we were not convinced of Erie's duty and breach on a plain meaning basis, the record further reflects an ongoing, consistent course of performance by the parties for a considerable period of time during which Erie did not dispute its duties and obligations for these issues and Erie's own written communications to its subcontractor clearly reflected, in conformity with *St. Mary's*, Erie's acceptance of their duty for these obligations, so as to constitute enforceable contract terms against Erie.

{¶ 41} Lastly, having found that the trial court did not improperly reach its judgment based upon "oral understandings", but rather properly arrived at a determination based upon both the plain meaning of language incorporated into the written solid waste agreement, as well as in accord with *St. Mary's*, through the content of Erie's communications and corresponding conduct, we further find that Erie's contention that Huron acted in violation of R.C. 121.22 in connection to this case is likewise without merit.

{¶ 42} We find no legal authority in support of the notion that R.C. 121.22 operates so as to abrogate the possibility that contracting government entities, like any other contracting parties, may potentially operate in such a way so as to modify the

15.

details of their contract over the course of contract. The subject agreement was not improperly altered without public meetings, as suggested by Erie.

{¶ 43} Wherefore, upon our de novo review of this case, we find that the trial court did not err in denying appellant's Civ.R. 59(A)(7) motion for a new trial. We find that the trial court properly determined that, "[A]ll these requirements were terms of the parties' contract and not mere customer service items and when Erie's subcontractor failed to meet all of these terms, Erie was in breach of its' contract obligations to Huron in significant ways."

{¶ 44} In the second assignment of error, appellant similarly maintains that the trial court erred in denying appellant's Civ.R. 59(A)(7) motion for a new trial based upon appellant's contention that Huron's replacement contract secured with Rumpke, the replacement solid waste services provider, was void premised upon the failed contention set forth in the first assignment of error that Huron violated R.C. 121.22 in connection to the Erie contract.

{¶ 45} Having determined above, in response to the first assignment of error, that Erie has failed to demonstrate R.C. 121.11 violations by Huron, the veracity of which the second assignment of error is premised upon, we likewise find appellant's second assignment of error not well-taken.

16.

**{¶ 46}** On consideration whereof, the judgment of the Erie County Court of Common Pleas is hereby affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.          _____

                                                   JUDGE

Gene A. Zmuda, J. _____
CONCUR.                           _____

                                                   JUDGE

Christine E. Mayle, J.         _____
CONCURS AND WRITES                      JUDGE
SEPARATELY.

**MAYLE, J.**

**{¶ 47}** I concur in the ultimate disposition of this case, but I disagree with the analysis.

**{¶ 48}** In its first assignment of error, Erie County argues that it is entitled to a new trial under Civ.R. 59(A) because R.C. 121.22(C)—which requires governmental bodies to deliberate public issues in public meetings—supposedly "prohibits inclusion of

oral understandings not expressed in the Agreement." As an initial matter, I agree with the majority's conclusion that this assignment of error is built upon a faulty premise— i.e., "the trial court did not improperly reach its judgment based upon 'oral understandings' * * *." Instead, the trial court properly considered external evidence, including the parties' course of dealing and performance, when determining the scope of Erie County's obligations under the 2014 contract with Huron County.

{¶ 49} It is important to clarify, however, that extrinsic evidence can be considered in an effort to give effect to the parties' intentions "[o]nly when the language of a contract is unclear or ambiguous * * *." *Shifrin v. Forest City Ents., Inc.,* 64 Ohio St.3d 635, 597 N.E.2d 499 (1992), syllabus. In my view, the trial court properly concluded that the written contract between Erie County and Huron County is ambiguous—as the trial court stated, the relevant contract is "ostensibly vague" and "very bare-boned"—before it considered extrinsic evidence to interpret the parties' respective obligations under the written contract.

{¶ 50} For that reason, the trial court did not improperly enforce any "oral understandings" but, rather, merely applied well-established principles of contract interpretation to the enforcement of an ambiguous contract. It is wholly immaterial that the contract at issue is a government contract because, as repeatedly recognized by the Supreme Court of Ohio, "'[a] Government contract should be interpreted as are contracts between individuals, with a view to ascertaining the intention of the parties and to give it

18.

effect accordingly, if that can be done consistently with the terms of the instrument.'"

*S&M Constructors, Inc. v. Columbus,* 70 Ohio St.2d 69, 71, 434 N.E.2d 1349 (1982), quoting *Hollerbach v. United States,* 233 U.S. 165, 171-172, 34 S.Ct. 553, 58 L.Ed. 898 (1914); *see also Phelps v. Logan Natural Gas & Fuel Co.,* 101 Ohio St. 144, 148, 128 N.E. 58 (1920) (Government contracts "are governed by the same principles as apply to contracts between individuals."); *St. Marys v. Auglaize Cty. Bd. of Commrs.,* 115 Ohio St.3d 387, 2007-Ohio-5026, 875 N.E.2d 561, ¶ 39 (In a case involving a public contract, the court expressly recognized that "the practical construction made by the parties may be considered by the court as an aid to its construction when the contract is ambiguous, uncertain, doubtful, or where the words thereof are susceptible to more than one meaning, or when a dispute has arisen between the parties after a period of operation under the contract."  (Emphasis deleted and internal quotation omitted.)).

**{¶ 51}** Despite this clear precedent from the Ohio Supreme Court stating that government contracts are subject to the same rules of interpretation as any other contract, Erie County nonetheless maintains that R.C. 121.22 bars a trial court from considering extrinsic evidence when interpreting a government contract with ambiguous terms.  There is no law to support this proposition—and for good reason.  Like private individuals, government entities occasionally enter into contracts with ambiguous provisions or missing terms.  If courts were precluded from considering extrinsic evidence when faced with such contracts, how could they ever resolve the ambiguities?  Without parol

19.

evidence, it would be impossible to give effect to the intention of the parties, and impossible to enforce the agreements. That cannot be—and is not—the law.

{¶ 52} For all these reasons, I agree that the first assignment of error should be found not well-taken.

{¶ 53} In the second assignment of error, Erie County argues that the trial court erred when it considered the amount that Huron County paid to its replacement trash hauler, Rumpke, when calculating damages because the relevant contract between Huron County and Rumpke is supposedly void under R.C. 121.22 (requiring public deliberations on public contracts) and R.C. 307.86 (requiring competitive bidding). In my view, the resolution of this assignment of error is not dependent upon the outcome of the first assignment of error, and therefore requires a separate analysis.

{¶ 54} "'Generally, a party injured by a breach of contract is entitled to his expectation interest, or "his interest in having the benefit of his bargain by being put in as good a position as he would have been in had the contract been performed."'" *Boston v. Sealmaster Industries,* 6th Dist. Erie No. E-03-040, 2004-Ohio-4278, ¶ 30, quoting *Rasnick v. Tubbs*, 126 Ohio App.3d 431, 437, 710 N.E.2d 750 (3d Dist.1998), citing Restatement of the Law 2d, Contracts, Section 344, at 102-103 (1981). "'Where the injured party has simply had to pay an additional amount to arrange a substitute transaction[, that party] can be adequately compensated by damages based on that amount.'" *Hart v. Brad Smith Roofing Co.,* 8th Dist. Cuyahoga No. 80967, 2002-Ohio-

20.

5853, ¶ 8, quoting Restatement of the Law 2d, Contracts, Section 347 (1981). In other words, the non-breaching party may recover, as expectation damages, "the difference between the contract price and the actual cost of completing the work required under the contract." *Murray v. Marbro Builders, Inc.,* 53 Ohio App.2d 1, 6, 371 N.E.2d 218 (1st Dist.1977).

{¶ 55} Here, the trial court correctly applied this law when it concluded:

The services provided by Rumpke were nearly identical to the services formerly provided by Erie County and the contractual arrangements between Rumpke and Huron County were substantially similar to those between Erie County and Huron County. Defendants presented evidence of the expense for these services it would have incurred had Erie County continued to provide services during the 4/1/18 through 12/31/19 period. The difference between those two expense amounts is the traditional cost of cover or replacement services under contract law. This measure of damages aims to give Huron County the benefit of its original contract with Erie County which Huron County lost due to Erie County's material breach of the original agreement.

{¶ 56} Erie County is under the misimpression that the trial court somehow *enforced* the Rumpke-Huron County contract when it calculated damages in this case. It did not. It merely considered the amounts that Huron County paid to Rumpke when

21.

calculating damages, which was proper given that such payments are "the traditional cost of cover or replacement services under contract law[,]" as recognized by the trial court. Moreover, the trial court specifically found that "[t]he evidence established the practical necessity (due to Erie County's material breach of contract) of Huron County replacing solid waste services with a new contractor in mid-2018 and no argument or evidence insinuated that contract was other than ordinary and commercially reasonable."

{¶ 57} Consequently, even if it is assumed that Huron County failed to follow certain requirements of R.C. 121.22 and R.C. 307.86 when it contracted with Rumpke, the trial court did not err when it calculated Huron County's damages based upon the amounts that Huron County paid to Rumpke for replacement trash-hauling services. The trial court did not "enforce" the Rumpke-Huron County contract; it merely considered the amounts that Huron County paid to Rumpke as an "ordinary and commercially reasonable" cost of cover when calculating Huron County's damages—which was proper under Ohio law. For this reason, I agree that the second assignment of error should be found not well-taken.

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.

22.