[Cite as *Patel v. Strategic Group, L.L.C.*, 2020-Ohio-4990.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| BIPIN PATEL, | : | |
| Plaintiff-Appellee, | : | No. 109043 |
| v. | : | |
| STRATEGIC GROUP, L.L.C., | : | |
| Defendant-Appellant. | : | |

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART AND VACATED IN PART
**RELEASED AND JOURNALIZED:** October 22, 2020

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-18-897461

### *Appearances:*

Kenneth J. Fisher, Co., L.P.A., Kenneth J. Fisher, and Dennis A. Nevar, *for appellee.*

The Law Office of Jaye M. Schlachet, Eric M. Levy, and Jaye M. Schlachet, *for appellant.*

RAYMOND C. HEADEN, J.:

{¶ 1} Defendant-appellant Strategic Group, L.L.C. ("Strategic Group") appeals the trial court's order entering judgment in favor of plaintiff-appellee Bipin

Patel ("Patel") and against Strategic Group on Patel's claims of breach of contract and conversion, with an award of damages in the amount of $50,000. For the reasons that follow, we affirm in part and vacate in part.

## I.  Factual and Procedural History

{¶ 2}  On February 13, 2018, Strategic Group purchased the commercial real estate located at 1877 Triplett Boulevard, Akron, Ohio for $95,000 ("real property"). Strategic Group then advertised the real property for sale through the online website BizBuySell.

{¶ 3}  Patel, a resident of Alabama, communicated several times with Shadi Taha ("Taha"), a co-manager of Strategic Group, to discuss the real property. On March 5, 2018, Taha indicated via text message that the convenience store located on the real property had been subject to a lease agreement. According to Patel, Taha advised him that the underlying lease agreement was expiring, and Patel could either renew the lease or opt to run the convenience store on his own. Taha's text message read "renew the lease or take over!!!" Patel's intent was to purchase the real property and to personally operate the convenience store — he did not want the convenience store subject to an underlying lease agreement.

{¶ 4}  Taha provided differing testimony. Taha claimed he informed Patel the lease agreement was in place with a few years remaining on the underlying lease. Per Taha, Patel asked if Strategic Group would negotiate with the current tenant and attempt to terminate the lease agreement. Taha notified Patel that Strategic Group

would not attempt such negotiations, but Patel could pursue those options once he owned the real property.

{¶ 5} Patel, along with three other individuals, traveled to Ohio to inspect the real property in early March 2018. On March 10, 2018 ("the March meeting"), Patel and his associates met Taha at a local Starbucks. Patel had not retained an attorney at that point in time.

{¶ 6} The parties provided contrary testimony regarding the documents exchanged at the March meeting. Patel denied that Taha provided him with a purchase agreement or lease agreement at that time. Patel claimed he first received copies of the purchase agreement and lease agreement, by email, following the March meeting. Conversely, Taha stated he presented the proposed purchase agreement — that represented the sale of the real property from Strategic Group to Patel for the sum of $550,000 — as well as a copy of the underlying lease at the March meeting. Taha testified that Patel and his associates examined the documents for approximately one hour.

{¶ 7} All parties agree that the purchase agreement noted Patel's remittance of $50,000 earnest money. Patel paid the earnest money at the March meeting with three personal checks. Patel's father and two of Patel's friends each provided a check; the checks were made payable to Strategic Group. Strategic Group did not place the earnest money in escrow, as required under the purchase agreement, but deposited the funds in its personal bank account.

{¶ 8} Patel provided conflicting testimony as to why he submitted the earnest money at the March meeting, prior to execution of the purchase agreement. Patel first testified that Taha required payment of the earnest money before he executed the purchase agreement. Patel later conceded he was anxious to purchase the real property and informed Taha that he would pay the earnest money and subsequently have the documents reviewed by his attorney.

{¶ 9} Patel and Taha did not meet again following the March meeting, but exchanged copies of the relevant documents by email. While Taha asserted he provided the purchase agreement and lease agreement at the March meeting, Patel claimed receipt of the purchase agreement on March 11, 2018, and a partial lease on March 12, 2018. The partial lease agreement did not contain the pages that would have shown the lessee agreed to the available options, thereby committing to a lease extension until November 2020.

{¶ 10} According to Taha, he provided Patel with duplicate copies of the lease on March 13, 2018, and March 20, 2018, and Patel should have known the real property was subject to the underlying lease. The entire lease agreement was over 70 pages and Taha admitted he never read the document in full. Patel maintained he did not receive the entire lease agreement until after his receipt of the title commitment.

{¶ 11} The parties negotiated the purchase agreement by adding to the existing, printed paragraphs with hand-written language that was initialed by both buyer and seller. The document was executed on March 13, 2018. Taha then

contacted Barristers Title of Ohio ("Barristers") on March 14, 2018, to complete the title work associated with the purchase agreement.

{¶ 12} Patel received a copy of the title commitment from Barristers on March 19, 2018. The title commitment included a handwritten notation that the buyer and seller — Patel and Strategic Group — would handle the assignment of the lease outside of escrow. This was Patel's first notice that the underlying lease agreement was not expired.

{¶ 13} Upon receipt of the title commitment, Patel provided his attorney, Christian Pereyda ("Pereyda"), with the documents relative to the purchase agreement. Pereyda penned a letter to Strategic Group, on Patel's behalf, stating Patel would not go forward with the contract because the property was not satisfactory for its intended purpose. The letter requested the return of Patel's earnest money. Patel may also have contacted Strategic Group directly and indicated that because the lease was not expired, he was terminating the agreement and requested the return of his earnest money.

{¶ 14} Taha asserted that he was contacted by Patel after March 19, 2018, and asked to renegotiate the purchase agreement for a lower selling price. Patel conceded he attempted to negotiate a lower price after Taha refused to return the earnest money, but the parties did not agree upon alternate terms.

{¶ 15} Patel insisted he terminated the purchase agreement as permitted by the document's express terms and demanded repayment of his $50,000 earnest money. Strategic Group refused to accept Patel's termination notice and, instead,

argued it was entitled to the earnest money because Patel breached the contract when he failed to complete the purchase of the real property.

{¶ 16} Due to Strategic Group's refusal to return the earnest money, Patel filed suit against Strategic Group on May 5, 2018, claiming breach of contract, conversion, fraudulent misrepresentation, negligent misrepresentation, and fraudulent inducement. Strategic Group filed an answer on June 7, 2018. Strategic Group and Patel filed motions for summary judgment on January 23, 2019, and March 21, 2019, respectively. The trial court denied both summary judgment motions on June 4, 2019.

{¶ 17} On June 26, 2019, the trial judge conducted a bench trial. In interpreting the purchase agreement, the trial judge found rider A, when read in conjunction with paragraph 6, was subject to multiple interpretations. The judge allowed the introduction of parol evidence to determine the parties' intent when they entered the agreement. Both parties presented evidence at trial, and the trial court rendered a verdict in favor of Patel on his breach of contract and conversion claims, with an award of $50,000. An opinion and order were journalized by the trial court on September 6, 2019.

{¶ 18} Strategic Group filed a timely notice of appeal on September 24, 2019, and raised, verbatim, the following assignments of error:

> Assignment of Error No. 1: The trial court erred in considering parol evidence in awarding judgment to appellee.

Assignment of Error No. 2:  The trial court erred in finding appellant liable to appellee for breach of contract which was not supported by the evidence.

Assignment of Error No. 3:  The trial court erred by awarding judgment on appellee's conversion claim where it also awarded judgment on the claim of breach of contract.

Assignment of Error No.4:  The trial court erred in awarding appellee judgment against appellant on its claim for conversion.

## II.  Law and Analysis

### A.  Standard of Review

{¶ 19} Strategic Group's arguments that the purchase agreement language was not ambiguous, parol evidence was erroneously considered, and the trial court erred when it found Strategic Group breached the contract present mixed questions of fact and law:

> While the interpretation of a contract is generally a matter of law subject to de novo review, the same standard does not apply when the agreement is ambiguous, as the trial court found in this case. *See Dzina v. Dzina*, 8th Dist. Cuyahoga No. 83148, 2004-Ohio-4497, ¶ 11-13 (whenever contractual language is deemed to be ambiguous, it is the responsibility of the trial court to interpret it, and the trial court has broad discretion in clarifying ambiguous language).  The interpretation of an ambiguous term used in a contract is a question of fact and will not be reversed on appeal absent an abuse of discretion. *Maines Paper & Food Serv., Inc. v. Eanes*, 8th Dist. Cuyahoga No. 77301, 2000 Ohio App. LEXIS 4480, 2 (Sept. 28, 2000).  A trial court's decision does not constitute an abuse of discretion unless it is unreasonable, arbitrary, or unconscionable. *Castlebrook Ltd. v. Dayton Properties Ltd.*, 78 Ohio App.3d 340, 346, 604 N.E.2d 808 (2d Dist.1992), citing *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 87, 482 N.E.2d 1248 (1985).  Accordingly, when applying this standard of review, an appellate court is not free to substitute its judgment for that of the trial court. *Nofzinger v. Blood*, 6th Dist. Huron No. H-02-014, 2003-Ohio-1406, ¶ 42.

*MRI Software, L.L.C. v. W. Oaks Mall FL, L.L.C.*, 2018-Ohio-2190, 116 N.E.3d 694, ¶ 11 (8th Dist.).

{¶ 20} As to the trial court's factual findings that Strategic Group breached the purchase agreement, the weight given to the evidence and the credibility of the witnesses are primarily issues assessed by the trier of fact. *Id.* at ¶ 12. The reviewing court views the trial court's credibility determinations with due deference. *Id.* And "[b]ecause the trial court is best able to view the witnesses and observe their demeanor when it weighs the credibility of the offered testimony, there is a presumption that the findings of the trier of fact are correct." *Id.,* citing *Nofzinger* at ¶ 41, citing *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). The standard of appellate review of the trial court's decision that Strategic Group breached the contract is manifest weight of the evidence. *See Schaste Metals v. Tech Heating & Air Conditioning*, 8th Dist. Cuyahoga No. 71589, 1997 Ohio App. LEXIS 3543, 3 (Aug. 7, 1997) (a breach of contract claim is reviewed under a manifest weight of the evidence standard). "Accordingly, following a bench trial, a reviewing court will generally uphold a trial court's judgment as long as the manifest weight of the evidence supports it — that is, as long as 'some' competent and credible evidence supports it." *MRI Software* at ¶ 12, citing *Hamilton v. Ball*, 2014-Ohio-1118, 7 N.E.3d 1241, ¶ 15 (4th Dist.).

## B. Breach of Contract

{¶ 21} For ease of analysis, we will review the assignments of error out of order and first discuss the second assignment of error. In its second assignment of

error, Strategic Group argues that the trial court erred when it found in favor of Patel on his breach of contract claim. Specifically, the trial court found that Patel, pursuant to the terms of the purchase agreement, terminated the contract and, therefore, Strategic Group was required to return Patel's earnest money. Strategic Group's failure to remit the earnest money resulted in a breach of contract.

{¶ 22} We first look at the trial court's assessment of the contract — the purchase agreement. The trial court found that when read together paragraph 6 and rider A of the purchase agreement were ambiguous. Paragraph 6 reads:

> 6. **CLOSING**: The closing of the sale of the Property (the "Closing Date") shall be 30 days after removal/satisfaction or waiver of all contingencies, but no later than 20 March 2018.

Additionally, rider A of the purchase agreement reads in its entirety:

RIDER A

ADDITIONAL CONTINGENCIES

TO

PURCHASE AGREEMENT

ADDITIONS TO PRINTED PARAGRAPHS

## SOLD AS IS NO CONTINGENCIES

{¶ 23} Paragraph 6 required the removal, satisfaction, or waiver of all contingencies by March 20, 2018; contingencies were defined in rider A. The terms of rider A were subject to two interpretations: (1) the parties' handwritten additions to the printed paragraphs — that were initialed by both parties — constituted

contingencies, or (2) the language "additions to printed paragraphs" was a heading and there were no contingencies under the purchase agreement.

{¶ 24} Patel argued the "additions to printed paragraphs" language identified contingencies whereas Strategic Group argued this verbiage was simply a heading and no contingencies applied under the purchase agreement. The contract terms of rider A were susceptible to multiple interpretations thereby creating ambiguity. *See Michael A. Gerard, Inc. v. Haffke*, 8th Dist. Cuyahoga No. 98488, 2013-Ohio-168, ¶ 11, citing *Hillsboro v. Fraternal Order of Police, Ohio Labor Council, Inc.*, 52 Ohio St.3d 174, 177, 556 N.E.2d 1186 (1990) (contract terms reasonably susceptible to more than one explanation are ambiguous).

{¶ 25} The interpretation of paragraph 6 and rider A was not problematic until Barristers distributed the title commitment. The purchase agreement required Strategic Group to deliver a title commitment to Patel by March 18, 2018. (Purchase agreement at paragraph 12.) After the parties executed the purchase agreement, Strategic Group secured Barristers for completion of the necessary title work. On March 19, 2018, one day later than required by the terms of the contract, Barristers delivered a copy of the title commitment to Patel. The title commitment excluded coverage for the underlying lease and the document included a handwritten note that read: "Buyer and Seller to get assignment [of lease] outside of escrow." (Patel's trial exhibit No. 3.) The title work indicated the underlying lease would expire on November 16, 2020. Patel alleged this was his first notice that the lessee had

exercised its options to renew the underlying lease until November 2020.  Patel

subsequently requested and obtained a complete copy of the lease agreement.

{¶ 26} Paragraphs 11 and 12 of the purchase agreement addressed title and

read as follows:

> **11.  TITLE**:  At the closing Seller shall deliver to Buyer a good and sufficient general warranty deed (the "Deed") conveying good and marketable fee simple title in and to the Property to Buyer, free and clear of all liens, claims and encumbrances whatsoever, except (a) any mortgage financing assumed by Buyer (b) covenants, easements, reservations, conditions and restrictions of record, if any, *reviewed and approved by Buyer, pursuant to paragraph 12*, (c) zoning changes and (d) real estate taxes and assessments, both general and special, which are a lien but not yet due and payable as of the Closing Date (as hereinafter defined).

> 12.  **TITLE POLICY**:  Seller shall furnish to Buyer at Seller's expense an Owner's Policy of Title Insurance (the "Title Policy"), issued by _____ in the amount of the Sales Price and dates at or after the Closing Date, insuring record title to the Property to Buyer subject only to the exceptions described in paragraph 11, provided that Buyer shall have the right to review *and approve* any easements, covenants, conditions, reservations or restrictions of record disclosed in the preliminary title commitment to be provided to Buyer by Seller within five (5) days after the execution of this agreement.  If for any reason the title company is unable to issue a Title Policy as aforesaid of if Seller is otherwise unable to convey title as set forth in paragraph 11 and if within fifteen (15) days after the receipt of notice by certified mail from Buyer to Seller to remove or satisfy the defect or defects in title, said defects are not cured, then at the expiration of said fifteen (15) day period, Buyer may at his option, to be exercised by notice by certified mail to Seller within five (5) days after the expiration of said fifteen (15) day period, (i) accept such title as Seller is able to furnish, or (ii) terminate this Agreement and receive all funds or documents, if any, previously paid or deposited by Buyer.  Upon such termination neither party hereto shall thereafter be under any further liability to the other party hereto.

(Emphasis added.)  We note that the emphasized language in paragraph 11 —

reviewed and approved by Buyer, pursuant to paragraph 12 — was a handwritten

addition to the paragraph and, depending upon how rider A was interpreted, could have qualified as an "addition to printed paragraphs" or a contingency under rider A. The wording "and approve" in paragraph 12 was crossed out by the parties.

{¶ 27} The question before the court was whether the parties intended the handwritten additions to the printed paragraphs to be contingencies that had to be waived, removed, or satisfied before closing. (Purchase agreement at paragraph 6.) If so, Patel's approval of the assignment of the lease — divulged for the first time in the title commitment — was a contingency that had to be waived, removed, or satisfied before closing. Parol evidence was introduced to interpret the parties' intended meaning of paragraph 6 and rider A.

{¶ 28} Patel testified that he did not intend to execute the purchase agreement if an underlying lease was attached to the real property because Patel wanted to personally operate the convenience store. Taha was aware of Patel's intention to purchase the real property and operate the convenience store himself. To do so, there could be no underlying lease agreement attached to the real property. Patel testified about Taha's March 5, 2018 text that led Patel to believe he could either renew the underlying lease agreement or choose to terminate the lease and operate the convenience store personally. The parol evidence clarified for the trial court that the parties intended the contingencies to include the handwritten additions to the printed paragraphs, including Patel's approval of the title work.

{¶ 29} After establishing the intentions of the parties and determining the language added to the printed purchase agreement served as contingencies, the trial

court further analyzed and interpreted the terms of the purchase agreement. Barristers' title work showed the real property was encumbered by the underlying lease and the lease had to be assigned from Strategic Group to Patel. The purchase agreement did not specifically address the assignment of the lease from Strategic Group to Patel or the current renewal status of the lease agreement. However, Patel's approval of the title work, as required under paragraphs 11 and 12, allowed him to assess these issues presented in the title commitment. Patel testified that upon receiving the title commitment, he terminated the purchase agreement.

{¶ 30} The purchase agreement provided for termination under paragraphs 4, 5, and 12. Paragraph 5, specifically, allowed Patel to terminate the purchase agreement and receive a full refund of the earnest money should Patel's investigation of the property disclose any state of facts objectionable, in Patel's sole judgment, per the contingencies contained in rider A. Patel found the title commitment objectionable and, therefore, notified Strategic Group of his intentions to terminate. Patel sent his termination notice, through his attorney, in writing and by mail as required by the terms of the purchase agreement.

{¶ 31} Strategic Group argues that because Patel testified at trial that the physical land was not objectionable — only the presence of the lease — Patel could not terminate under paragraph 5. We do not interpret paragraph 5 as imposing such a limitation. Further, the trial court found the terms of paragraph 5 permitted Patel's objections to the purchase agreement and title commitment and we do not find this was against the manifest weight of the evidence.

{¶ 32} Paragraph 5 also stated Patel would receive a refund of the earnest money upon his termination of the purchase agreement. Strategic Group's failure to return the earnest money constituted a breach of contract.

{¶ 33} Based upon the foregoing, the trial court found that the purchase agreement contained ambiguous terms that led to more than one interpretation of rider A and paragraph 6. The trial court's introduction of parol evidence helped to explain the parties' intentions when they executed the purchase agreement. The trial court found Patel was entitled to terminate the purchase agreement, which he did with the requisite notice required under the agreement. Upon receipt of Patel's notice of termination, Strategic Group was obligated to return Patel's earnest money and Strategic Group's failure to do so constituted a breach. The trial court's findings were supported by competent, credible evidence and were not unreasonable, arbitrary, or unconscionable. Therefore, the trial court correctly found in favor of Patel on his breach of contract claim and Strategic Group's second assignment of error is overruled.

## C. Parol Evidence

{¶ 34} In its first assignment of error, Strategic Group contends that the trial court erred when it considered parol evidence. Specifically, Strategic Group argues that the terms of the purchase contract were not ambiguous and, therefore, parol evidence should not have been introduced.

{¶ 35} Interpretation of a contract requires the court to ascertain and give effect to the parties' intent. *MRI Software*, 2018-Ohio-2190, 116 N.E.3d 694, at ¶ 27,

citing *Hamilton Ins. Servs., Inc. v. Nationwide Ins. Cos.*, 86 Ohio St.3d 270, 273, 714 N.E.2d 898 (1999). In so doing, the court reviews the contract as a whole and presumes the parties' intent is reflected in the contract's language. *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130, 509 N.E.2d 411 (1987), paragraph one of the syllabus. As a result, if the contract's language is plain and unambiguous, the terms are enforced as written, and courts may not turn to evidence outside the four corners of the contract to alter its meaning. *Beverage Holdings, L.L.C. v. 5701 Lombardo, L.L.C.*, 159 Ohio St.3d 194, 2019-Ohio-4716, 150 N.E.3d 28, ¶ 13.

{¶ 36} Conversely, courts will consider extrinsic evidence to give effect to the parties' intentions where the language of the contract is unclear or ambiguous. *Alliant Food Servs. v. Powers*, 8th Dist. Cuyahoga No. 82189, 2003-Ohio-4193, ¶ 36. Contract terms are considered ambiguous where their meanings are reasonably susceptible to multiple interpretations. *Porterfield v. Bruner Land Co.*, 2017-Ohio-9045, 103 N.E.3d 152, ¶ 18 (7th Dist.), citing *First Natl. Bank of Pennsylvania v. Nader*, 2017-Ohio-1482, 89 N.E.3d 274, ¶ 25 (9th Dist.). Once a clause is found ambiguous, "parol evidence can be introduced to explain the intention of the parties." *Schleicher v. Alliance Corporate Res.*, 10th Dist. Franklin No. 95APE03-311, 1995 Ohio App. LEXIS 5405, 9 (Dec. 7, 1995). "Parol evidence is used only to interpret the terms, and not to contradict the terms." *First Natl. Bank of Pennsylvania* at ¶ 25.

{¶ 37} Courts apply a de novo standard when reviewing the application of parol evidence. *Rice v. Rice*, 7th Dist. Columbiana No. 2001-CO-28, 2002-Ohio-

3459, ¶ 38, citing *Charles A. Burton, Inc. v. Durkee*, 158 Ohio St. 313, 324, 109 N.E.2d 265 (1952).

{¶ 38} The trial court determined that a reading of paragraph 6 and rider A together created an ambiguity since multiple interpretations were possible. Rider A could have meant the additions to the printed paragraphs were contingencies or, alternatively, the wording "additions to printed paragraphs" was a heading and no contingencies applied under the contract.

{¶ 39} The parol evidence provided the trial court clarity as to the parties' mutual intentions when they entered the purchase agreement. The trial court considered Taha's representations to Patel, relative to the status of the underlying lease agreement and Patel's right to operate the convenience store as his own business. Taha's March 5, 2018 text communicated to Patel that the underlying lease agreement was expired and did not need to be renewed. Patel reasonably relied on those representations. It was Patel's intention to enter the purchase agreement with the expectation that he would operate the convenience store independently and that the real property would not be subject to an underlying lease agreement. The trial court found the parties intended and mutually agreed at drafting that the language "additions to printed paragraphs" demonstrated the additional handwritten terms included in the purchase agreement were contingencies thereby allowing Patel to approve the title commitment. The record reflects that the trial court did not err when it found the terms of the purchase

agreement ambiguous and considered parol evidence to establish what the parties mutually agreed to and understood to be the meaning of rider A.

{¶ 40} Thus, Strategic Group's first assignment of error lacks merit and is overruled.

### D. Conversion

{¶ 41} Strategic Group's third and fourth assignments of error both address conversion and will be discussed collectively. Strategic Group argues that the trial court erred when it found it liable for conversion and awarded Patel judgment on his conversion claim.

{¶ 42} Conversion and breach of contract are alternate causes of action. *Boston v. Sealmaster Industries*, 6th Dist. Erie No. E-03-040, 2004-Ohio-4278, ¶ 36, citing *Richardson v. Shaw*, 209 U.S. 365, 382-383, 28 S.Ct. 512, 52 L.Ed. 835 (1908). A litigant may not recover for both a breach of contract and conversion. *Boston* at ¶ 37. An award on both claims would amount to double recovery. *Kindle Rd. Co., L.L.C. v. Trickle*, 5th Dist. Licking No. 03CA99, 2004-Ohio-4668, ¶ 61.

{¶ 43} Patel filed suit against Strategic Group and identified five causes of action; only his claims of breach of contract and conversion are relevant to this inquiry. Through his breach of contract and conversion claims, Patel sought repayment of the $50,000 earnest money he deposited with Strategic Group at the inception of the parties' dealings.

{¶ 44} The trial court determined Strategic Group breached the purchase agreement when it failed to refund the earnest money to Patel after Patel exercised

his right to terminate the agreement. Additionally, the trial court found Strategic Group wrongfully withheld, and continued to wrongfully withhold, the earnest money in contravention to Patel's property rights and, therefore, converted Patel's property. The trial court entered judgment in favor of Patel, and against Strategic Group, on the claims of breach of contract and conversion and awarded damages to Patel totaling $50,000.

{¶ 45} The trial court correctly found in favor of Patel on his breach of contract claim, as described above in response to Strategic Group's second assignment of error. Once the trial court returned the full value of the alleged converted property to Patel — as occurred when the trial court awarded Patel $50,000 on his breach of contract claim — Patel suffered no damages pursuant to his conversion action. *See Silverman v. Am. Income Life Ins. Co. of Indianapolis*, 10th Dist. Franklin Nos. 01AP-338 and 01AP-339, 2001 Ohio App. LEXIS 5683, 32 (Dec. 18, 2001) (where the owner received full value of the converted property, he suffered no damages under a conversion cause of action). Breach of contract and conversion are alternate causes of action, and once the trial court found Strategic Group breached the purchase agreement, there was no basis for the trial court to consider Patel's claim of conversion. *See Dream Makers v. Marshek*, 8th Dist. Cuyahoga No. 81249, 2002-Ohio-7069, ¶ 20 (based upon plaintiff's conversion and breach of contract causes of action that sought identical damages from the defendant, the trial court correctly granted defendant's motion for summary

judgment on the conversion claim because the facts presented a clear and simple contract action under which the plaintiff had recovered the alleged damages).

**{¶ 46}** We find that once the trial court found Strategic Group liable for breach of contract, the conversion claim could not be considered and any arguments regarding conversion were moot. We vacate the order that found Strategic Group liable for conversion and vacate the portion of the judgment that found Strategic Group liable for $50,000 due to conversion. We affirm the judgment to the extent it awarded Patel $50,000 for damages under his breach of contract claim. In light of this conclusion, Strategic Group's third and fourth assignments of error are moot.

**{¶ 47}** Judgment affirmed in part and vacated in part.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
RAYMOND C. HEADEN, JUDGE

PATRICIA ANN BLACKMON, P.J., and
ANITA LASTER MAYS, J., CONCUR