[Cite as *Woods v. Flemings*, 2024-Ohio-460.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

DOUG WOODS,                          :

    Plaintiff-Appellant,         :

                               No. 112749

    v.                           :

SHARAE FLEMINGS,                     :

    Defendant-Appellee.          :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED AND REMANDED
**RELEASED AND JOURNALIZED:** February 8, 2024

---

Civil Appeal from the Garfield Heights Municipal Court
Case No. CVG2202856

---

### *Appearances:*

Doug Woods, *pro se.*

The Legal Aid Society of Cleveland and Elizabeth A. Zak,
*for appellee.*

FRANK DANIEL CELEBREZZE, III, J.:

{¶ 1} Appellant Doug Woods ("Woods") challenges the judgment of the Garfield Heights Municipal Court, entering judgment against him on the claims asserted in his complaint and appellee Sharae Flemings's ("Flemings") counterclaim. After a thorough review of the applicable law and facts, we affirm the

judgment of the trial court. However, we remand to the trial court for the issuance of a nunc pro tunc judgment entry expressly setting forth the amount of damages awarded to Flemings.

## I. Factual and Procedural History

{¶ 2} Woods leased a residence on Mountville Drive in Maple Heights, Ohio ("property" or "premises"), to Flemings. The lease was for one year, commencing in October 2018. The rent for the property was $925 per month.

{¶ 3} Flemings was a participant of the Housing Choice Voucher Program administered by the Cuyahoga Metropolitan Housing Authority ("CMHA"). In order to facilitate Flemings's lease under this program, Woods entered into a Housing Assistance Payment ("HAP") Contract with CMHA.

{¶ 4} At the start of the lease, under the HAP Contract, CMHA subsidized $786 of the rent to Woods, and Flemings's portion was the remaining $139. In October 2021, Flemings's portion of the rent was changed to zero, and CMHA subsidized the entire $925.

{¶ 5} The HAP Contract set forth certain rights and responsibilities for Flemings, the tenant, and Woods, the owner. In particular, the HAP Contract required the owner of the property to be responsible for water and sewer costs. This provision conflicted with a term in the lease, which stated that Flemings was responsible for any water and sewer payment that was over $75 each month.

{¶ 6} Throughout the time that Flemings resided at the property, there were plumbing issues.  Flemings notified Woods of any clogs or leaks, and he usually sent someone to repair them.

{¶ 7} In September 2022, Woods filed an eviction action against Flemings. The complaint contained two causes of action — one for eviction and one for damages.  On October 1, 2022, Flemings vacated the premises, notified Woods that she was leaving, and left her keys on the kitchen counter in the property, per his instructions.

{¶ 8} The court held an initial first cause hearing, after which Flemings moved to dismiss the action based upon Woods's acceptance of payments after the date of his three-day eviction notice.  The trial court sought briefing on this issue and scheduled an additional hearing.  Woods then filed a notice of voluntary dismissal of his first cause of action, noting that Flemings had delivered possession of the premises.

{¶ 9} Woods's second cause of action sought damages for "back rent and/or damages."  Woods maintained that he was owed late fees, loss of rent for the three months after Flemings was evicted, water and sewer charges, and charges incurred for unclogging drainpipes and other repairs to the property after Flemings left.  The total damages sought by Woods was $20,178.86.

{¶ 10} Flemings delivered a letter to Woods requesting the return of her $1,000 security deposit.  Woods responded by providing an itemization of charges for damage to the property that he claimed Flemings was responsible for, toward

which he was applying the security deposit. The total amount of these damages was $16,331.67.

{¶ 11} Flemings filed a counterclaim, alleging that Woods had wrongfully withheld her security deposit and was negligent in his role as landlord. She sought compensatory damages and attorney fees.

{¶ 12} The court held a bench trial, after which it ruled in favor of Flemings and against Woods on Woods's remaining cause of action, finding that Woods was not entitled to (1) late fees because Flemings had deposited the funds within the grace period; (2) loss of rent since the months sought were from after Flemings had been evicted; (3) damages related to water and sewer bills since per the HAP contract, Woods was responsible for water and sewer charges; (4) damages sought for plumbing repairs because the evidence did not establish causation between the disrepair and actions by Flemings; (5) damages for other renovations after Flemings left the residence because the court found the receipt for repairs to be suspect and there was no other evidence in support; and (6) damages for funds expended for a furnace replacement because the evidence failed to establish causation between the need for replacement and actions by Flemings.

{¶ 13} The court did award Woods $140 for replacement of blinds and $800 for the depreciation of the premises due to cracked tiles and carpet replacement. The total amount of damages awarded to Woods was $940.

{¶ 14} With regard to Flemings's counterclaim, the court found against Flemings on her claim for compensatory damages and found that her security

deposit had not been wrongfully withheld since there was justification to withhold funds for the blinds and the flooring. The court held that Flemings's security deposit should be returned to her, less the $940 of damages awarded to Woods.

{¶ 15} Woods then filed the instant appeal, raising seven assignments of error for our review:

> 1. The trial court's failure to sanction Flemings or to allow the presentation of evidence or defenses not raised in her untimely answer, counterclaim or trial brief, was erroneous, prejudicial and an abuse of discretion.
>
> 2. The trial court's last-minute continuance of trial and denial of objection, to a date that Woods's witnesses were not available, was prejudicial and an abuse of discretion.
>
> 3. The trial court's calculation of the security deposit, as it pertained to the remaining amount owed to Flemings was erroneous, prejudicial, an abuse of discretion and against the manifest weight of the evidence.
>
> 4. The trial court's failure to award unpaid rent late fees and loss of income to Woods was erroneous, prejudicial, an abuse of discretion and against the manifest weight of the evidence.
>
> 5. The trial court's failure to award unpaid water and sewer to Woods was erroneous, contrary to law, prejudicial, an abuse of discretion and against the manifest weight of the evidence.
>
> 6. The trial court's award of end of lease property damages in favor of Flemings was erroneous, contrary to law, excessive, inadequate to Woods, violative of fact and logic, prejudicial, an abuse of discretion and against the manifest weight of the evidence.
>
> 7. The lower court's final judgment entry created a miscarriage of justice pursuant to bias or prejudice and a cumulation of errors.

## II. Law and Analysis

### A. First Assignment of Error

{¶ 16} In his first assignment of error, Woods argues that the trial court abused its discretion in failing to sanction Flemings and allowing the presentation of evidence or defenses that were not raised in her untimely answer, counterclaim, or trial brief.

{¶ 17} Woods is essentially arguing that the trial court improperly denied his motion for sanctions. His motion sought sanctions against Flemings for her failure to timely file her trial brief. Flemings did not file her trial brief by the original date set by the court. The court then continued the trial and allowed Flemings additional time to file her brief. Flemings eventually filed her brief four days after this deadline. Woods asserted that he was prejudiced by this delayed filing because the trial brief "presented stipulations, defenses, and theories of recovery which were not presented in [Flemings's] initial [c]ounterclaim or until now." He asked that the court preclude Flemings from presenting evidence "outside of common law negligence and the return of the deposit."

{¶ 18} A trial court has broad discretion to control pretrial matters. *Stross v. Laderman*, 8th Dist. Cuyahoga No. 74686, 1999 Ohio App. LEXIS 4452, at 2 (Sept. 23, 1999). This court has noted that a trial court may preclude a party from presenting evidence in support of their claims as a sanction for failing to file a trial brief. *See Stern v. Rob Oldham Properties, L.L.C.*, 2022-Ohio-1232, 190 N.E.3d 63, ¶ 52 (8th Dist.); *Stross*. However, here, Flemings did file a trial brief, albeit four

days after the deadline. Woods cannot demonstrate how he was prejudiced by the untimely filing. The trial brief restated much of what was in Flemings's counterclaim and expounded on the law upon which she would rely in support of her claims. Further, the trial brief listed only Flemings herself as her sole witness and set forth her exhibits — none of which were unknown to Woods and included exhibits that had been attached to her counterclaim, Woods's discovery responses, and his own deed reflecting the sale of the premises.

{¶ 19} We find no abuse of discretion by the trial court in denying Woods's motion for sanctions. Woods's first assignment of error is overruled.

### B. Second Assignment of Error

{¶ 20} In his second assignment of error, Woods argues that the trial court abused its discretion by continuing the trial to a date that his witnesses were not available.

{¶ 21} After the trial was canceled at the last minute on the day originally scheduled, Woods filed an objection and motion to reset the trial date. In this filing, he objected to the court canceling the trial at the last minute and rescheduling it for May 1, 2023. He stated that "the [b]ailiff rudely hung up" on him and said that "she'd just choose her own date and send it in the mail."

{¶ 22} In his appellate brief, Woods seems to imply that it was the judge, rather than the bailiff, who was rude and hung up on him. He notes in his brief that he asked for the trial to be held on April 17 rather than May 1, because his witnesses would not be available then. However, there is nothing in the record that reflects

that the court was informed of any issue with witness availability. In his objection to the continuance, Woods only stated that his witnesses "*may not* be available in the future." (Emphasis added.)

{¶ 23} "[A] court has supervisory control over its own docket and has the inherent authority to manage its own proceedings and grant continuances." *R.J.L. v. K.R.*, 8th Dist. Cuyahoga No. 108228, 2019-Ohio-3667, ¶ 19, citing *State ex rel. Buck v. McCabe*, 140 Ohio St. 535, 537, 45 N.E.2d 763 (1942). Absent an abuse of discretion, a reviewing court will not disturb the trial court's regulation of its own docket. *Frebes v. Am. Family Ins. Co.*, 8th Dist. Cuyahoga No. 109117, 2020-Ohio-4750, ¶ 32, citing *Bayview Loan Servicing, L.L.C. v. St. Cyr*, 2017-Ohio-2758, 90 N.E.3d 321, ¶ 26 (8th Dist.), citing *6750 BMS, L.L.C. v. Drentlau*, 2016-Ohio-1385, 62 N.E.3d 928, ¶ 18 (8th Dist.).

{¶ 24} Woods has not demonstrated that the trial court abused its discretion in canceling the trial and continuing it until May 1, 2023. While he contends that his witnesses were not available on that date, Woods does not point to anything in the record demonstrating this or that the trial court was aware of any issues with witness availability. Woods's second assignment of error is overruled.

### C. Third, Fourth, Fifth, and Sixth Assignments of Error

{¶ 25} Woods's third, fourth, fifth, and sixth assignments of error all contend that the trial court's decision was against the manifest weight of the evidence. For ease of discussion, we will address these assignments of error out of order, beginning with Woods's sixth assignment of error.

{¶ 26} In assessing whether a verdict in a civil bench trial is against the manifest weight of the evidence, we examine the entire record, weigh the evidence and all reasonable inferences, consider the witnesses' credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the verdict must be overturned and a new trial ordered. *Sonis v. Rasner*, 2015-Ohio-3028, 39 N.E.3d 871, ¶ 53 (8th Dist.), citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). "[A] reviewing court will generally uphold a trial court's judgment as long as the manifest weight of the evidence supports it — that is, as long as 'some' competent and credible evidence supports it." *Patel v. Strategic Group, L.L.C.*, 2020-Ohio-4990, 161 N.E.3d 42, ¶ 20 (8th Dist.), quoting *MRI Software, L.L.C. v. W. Oaks Mall FL, L.L.C.*, 2018-Ohio-2190, 116 N.E.3d 694, ¶ 12 (8th Dist.).

### 1. End of Lease Property Damages

{¶ 27} Woods's sixth assignment of error argues that the trial court erred by failing to award him property damages.

{¶ 28} Flemings testified that over the duration of the lease, there were several clogs to various drains in the house that she reported to Woods, who then had them unclogged. She stated that he did not charge her for these repairs at the time they were performed.

{¶ 29} Woods maintained that Flemings put cooking oil, hair, or hair dye down the sink, which caused all of the clogs. He also asserted that Flemings flushed feminine hygiene products, that her children put toys down the toilet, and that

Flemings poured concrete into a sink. Flemings denied ever using any oils when she cooked and was unable to think of anything that she may have put down the drain that would have caused it to clog. She further denied that her children had ever flushed any toys down the toilet or that she poured concrete down the plumbing. She also denied that she ever dyed her hair while she lived at the property or flushed any feminine hygiene products.

{¶ 30} Flemings went through each of the photos presented by Woods and denied that she was responsible for any of the damage shown, with the exception of several window blinds. She denied that the majority of the pictures reflected the state of the property when she left. She stated that there was nothing that Woods was seeking to charge her for that she actually owed.

{¶ 31} On cross-examination, Flemings admitted that Woods warned her to stop clogging the drains with her hair and to stop letting the toilets run, but did not admit that she did either of these things. She stated that she notified Woods right away when the toilet was running.

{¶ 32} We cannot find that there was competent, credible evidence to support Woods's claim that Flemings caused all of the damage to the property claimed by Woods. Based upon the pictures submitted and the testimony at trial, the trial court properly found that Flemings was only liable for the window blinds and the flooring.

{¶ 33} Woods's sixth assignment of error is overruled.

## 2. Calculation of Security Deposit

{¶ 34} Woods's third assignment of error asserts that the trial court erred in its calculation of the security deposit. Specifically, Woods points to this statement in the judgment entry: "The Court finds for the Defendant on the return of her security deposit, less damages owed in the Plaintiffs claim in the sum of $940.00." Woods construes this to mean that the court awarded Flemings $940.00.

{¶ 35} As set forth above, the security deposit in this matter was $1,000. The court found that Woods had not wrongfully withheld the security deposit due to damage to the premises as follows: $140 for window blinds, $400 for depreciation of the property due to cracked tiles, and $400 for depreciation of the property due to carpet runs. While not explicitly stated by the court, these damages total $940.

{¶ 36} The wording of the judgment is ambiguous, but we find that the total award to Flemings is $60 ($1000 security deposit minus $940 in damages for the blinds and flooring). Woods's third assignment of error is overruled. However, because the judgment entry does not clearly convey the amount of the award to Flemings, we remand this matter to the trial court to correct the judgment entry to explicitly state the same.

## 3. Failure to Award Damages of Unpaid Rent, Late Fees, and Loss of Income

{¶ 37} Woods's fourth assignment of error argues that the trial court erred by failing to award unpaid rent, late fees, and loss of income. He asserts that he was entitled to rent in the amount of $925 for the month of October 2022.

{¶ 38} Flemings argues that Woods failed to seek damages for future rent in his complaint. Even if he had, she contends that she moved out on October 1, 2022, pursuant to the notice to leave and eviction filing. Finally, she asserts that she is not liable for the rent at all — the HAP contract dictates that CMHA was paying the full contract rent of $925 per month.

{¶ 39} We find that Woods cannot recover any rent for October 2022 from Flemings. Preliminarily, it is undisputed that Flemings vacated the premises on October 1, 2022, following her receipt of the notice to leave and eviction filing. Moreover, under the HAP contract, which Woods signed, Flemings is not responsible for paying any portion of the rent.

{¶ 40} With regard to late fees, the trial court determined that Flemings electronically submitted the payments for her portion of the rent[1] prior to the end of the grace period. The lease provided that rent was due on the first of the month, but there was an eight day grace period before the rent would be considered late. The lease noted a $50 late fee for payments received on the tenth of the month or after.

{¶ 41} Woods's Exhibits 7A and 7B presented a ledger from the online payment system showing that all of Flemings's payments were "scheduled" before the tenth of each month. The ledger further lists the "deposit" date of the payments. This appears to be the day that the funds were deposited into Woods's account.

---

[1] The online payment system ledger reflects payments of $5, $112, or $139 from Flemings. The reasoning for these amounts is unclear since according to CMHA, Flemings only owed either $139 or zero dollars. Regardless, this issue is not before us, and we will assess the issue of the propriety of late fees with regard to the payments actually made.

There was a lag of four to nine days between the date the payment was scheduled and the date that the payment was deposited in Woods's account.

{¶ 42} Woods asserted at trial that Flemings should have accounted for this lag when making her payments. We are not persuaded by this argument. Regardless of when the online payment system ultimately provided the funds to Woods, Flemings made all of her payments prior to the tenth of the month, which rendered them timely. Accordingly, the trial court correctly determined that Woods was not entitled to any late fees.

{¶ 43} Finally, Woods sought damages for his loss of income for the months of November and December 2022. He argues that this loss of income was due to the excessive damage to the property that rendered it unavailable for rent during those two months.

{¶ 44} The trial court determined that Woods was not entitled to rental income from November and December 2022 because Woods had evicted Flemings. However, Woods's argument is that he lost rental income because he was unable to re-rent the property due to the damage caused by Flemings.

{¶ 45} The testimony demonstrated that after Flemings left, Woods renovated the property and put it up for sale. Thus, there was no evidence in the record that Woods intended to re-rent the property. Further, the evidence was unclear as to when the renovations took place. Woods's Exhibits 3A and 3B are two "Repair Receipts" from Kason's Remodeling, LLC. Exhibit 3A is dated October 3, 2022, and reflects a total of $7,857.75 in parts and labor to repair various items

throughout the property. The receipt shows that Woods paid $8,000 and received $142.25 in change.

{¶ 46} Exhibit 3B is also dated October 3, 2022, and shows an additional $397.19 in charges for two other repairs. The receipts further state that "[a]ll work shall be completed within three months except as permitted by weather."

{¶ 47} The trial court found these receipts suspect, in particular Exhibit 3A where Woods paid $8,000 in cash and received change rather than paying $7,900 and receiving change. The trial court also questioned how so much work could be performed in the two days since Flemings had vacated the premises. However, Woods testified that he paid in advance and that the work was performed over the month of October.

{¶ 48} We note that Woods's evidence regarding the repairs made to the property is meager. Even assuming arguendo that he had provided more substantial evidence about the performance and completion of the repairs, we held above that Woods has failed to provide competent, credible evidence to show that Flemings was responsible for all of the damages for which he sought compensation. As such, Flemings cannot be liable for Woods's claimed lost rental income that he attributes to the damage to the property.

{¶ 49} While we utilized different reasoning, we find that the trial court correctly held that Woods was not entitled to lost rental income. Woods's fourth assignment of error is overruled.

## 4. Failure to Award Unpaid Water and Sewer Fees

{¶ 50} In his fifth assignment of error, Woods argues that the trial court abused its discretion by declining to award him damages for portions of the water and sewer bills for which he claims Flemings was responsible.

{¶ 51} The trial court declined to award Woods damages for water and sewer bills, finding that

> the evidence established that [Woods] was billed for water and sewer by the utilities provider and that money was deducted from the on-line account established by [Woods]. The evidence established that [Woods] entered into the U.S. Department of Housing contract dated October 30, 2018 knowing that the contract established that the Owner was providing water and sewer. The evidence established that the aforesaid contract also provided that the Owner's obligation to provide water and sewer could not be modified by the lease.

> * * *

{¶ 52} Woods argues that the lease agreement between himself and Flemings provides that Flemings was responsible for any amount of the water or sewer bill that exceeded $75 each month. At trial, Woods submitted sewer bills reflecting charges of $503.70 for February 2019, $1,425.69 for March 2019, $598.75 for April 2019, $693.80 for December 2019, and $131.94 for May 2020. He asserted that after crediting Flemings with $75 per month, he was entitled to $4,881.47 for these bills. While he acknowledges that the HAP contract does state that the "owner" is responsible for water and sewer, he argues that the lease supersedes this language and that the CMHA accepted the terms of the lease.

{¶ 53} We find that the trial court correctly enforced the terms of the HAP contract. The HAP contract, which Woods does not dispute that he signed, provides that the "owner," in this case, Woods, "shall provide or pay for" water and sewer charges. The HAP contract was signed *after* the lease was entered into between Woods and Flemings. Woods clearly accepted the terms of the HAP contract.

{¶ 54} Within Part B of the HAP contract, Body of Contract, Section 5 states that "Part A of the HAP contract specifies what utilities and appliances are to be provided or paid by the owner or the tenant. The lease shall be consistent with the HAP contract."

{¶ 55} Accordingly, Woods was entirely responsible for the water and sewer charges each month. The trial court did not err in declining to award Woods damages for water and sewer charges. Woods's fifth assignment of error is overruled.

### D. Seventh Assignment of Error

{¶ 56} In his final assignment of error, Woods argues that the court's decision represented a miscarriage of justice due to its bias or prejudice and a cumulation of errors.

{¶ 57} Woods asserts that the trial court was biased against him in several prior cases; however, these are irrelevant to the instant appeal. Further, the record reflects that Woods did not object or raise this issue in the lower court proceedings. "It is well settled that an appellate court will not rule on an alleged error that could have been brought to the attention of the trial court." *E. Cleveland v. Echols,* 8th

Dist. Cuyahoga No. 74941, 1999 Ohio App. LEXIS 5706, 5 (Dec. 2, 1999), citing *State v. Peagler*, 76 Ohio St.3d 496, 499, 668 N.E.2d 489 (1996). R.C. 2701.031 mandates that allegations of judicial bias must be raised in an affidavit of disqualification filed at least seven days before the date of the hearing. No such affidavit was filed in this case.

> "A court of appeals is without authority to pass upon disqualification or to void the judgment of the trial court upon that basis. * * * R.C. 2701.03 sets forth the procedure by which a party may seek disqualification. The statute requires the party seeking disqualification to file an affidavit of prejudice with the Ohio Supreme Court."

*Echols*, quoting *State v. Ramos*, 88 Ohio App.3d 394, 398, 623 N.E.2d 1336 (9th Dist.1993).

{¶ 58} Because Woods failed to properly raise the issue of the trial court previously showing bias against him in other matters before the trial court in the instant matter, he is precluded from raising the issue on appeal.

{¶ 59} As it relates to his allegations of bias in the present case, Woods's argument essentially rehashes all of the rulings that went against him, most of which have been analyzed and upheld in this appeal. Thus, we cannot find that the trial court demonstrated bias against Woods.

{¶ 60} Finally, Woods contends that the cumulation of errors prevented him from having a fair trial. "Under the cumulative-error doctrine, a judgment can be reversed when the cumulation of errors prevents a fair trial even if each individual error alone does not justify reversal." *Daniels v. Northcoast Anesthesia Providers, Inc.*, 2018-Ohio-3562, 120 N.E.3d 52, ¶ 66 (8th Dist.2018).

{¶ 61} We have determined that the trial court did not commit any error, much less multiple errors. Therefore, the cumulative-error doctrine does not apply here. Woods's seventh assignment of error is overruled.

### III. Conclusion

{¶ 62} The trial court did not err in denying Woods's motion for sanctions and continuing the trial. The trial court also did not err in declining to award Woods late fees, loss of rental income, back rent, water and sewer fees, and damages beyond those related to the window blinds and the flooring, or in its award of the remainder of the security deposit to Flemings. The trial court's verdict was not against the manifest weight of the evidence, Woods has not demonstrated bias, and there was no cumulative error.

{¶ 63} Finally, we remand this matter to the trial court for the issuance of a nunc pro tunc entry explicitly stating that the amount of damages awarded to Flemings was $60.00.

{¶ 64} Judgment is affirmed and remanded.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the municipal court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
FRANK DANIEL CELEBREZZE, III, JUDGE

EILEEN T. GALLAGHER, P.J., and
MARY J. BOYLE, J., CONCUR